John WHITFIELD, Plaintiff–Appellant,

v.

Charles SCULLY, Former Supt.; Gail Haponik; C.O. Tornabene; C.O. C. Mitchell; John and Jane Does, Defendants–Appellees.

Docket No. 98–2933.

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1999.

Decided Feb. 27, 2001.

Before: CARDAMONE, CABRANES, Circuit Judges, and KEENAN *, District Judge.

CARDAMONE, Circuit Judge:

The subject matter of this appeal involves the payment by appellant, who is incarcerated, of $3.10 out of his weekly income of $7.75 to defray the costs of unsuccessful litigation against prison officials arising from a prison altercation with a fellow inmate. Despite the small amount of money involved, the appeal presents important issues for us to resolve. Congress, in recent amendments to the *in forma pauperis* statute, aimed to reduce the volume of meritless litigation flooding federal courts by making payment of filing fees mandatory. This statute also provides a mandatory mechanism for collecting costs when assessed by courts against prisoners who are made to pay the consequences should they lose. But when, as here, a prisoner has only a small amount of disposable income available, any judgment for costs looms large since, without a little money, a prisoner is powerless to satisfy his barest wants.

Recognizing this practical consideration, Congress decreed that mandated deductions taken from a prisoner's account for costs be limited to 20 percent of the prisoner's weekly earnings. But, when appellant was taxed $595.96 in the district court for deposition costs and $711.40 in the court of appeals for printing costs, defendants treated each judgment as a separate item and levied 20 percent for each, amounting to a total deduction of 40 percent. We think this manner of deduction violates the statute, and that defendants may recover only 20 percent of appellant's weekly earnings toward the total amount owed. This result fairly construes the statutory limit because a heavier deduction might otherwise deprive appellant of his

Charles D. Cole, Jr., New York, New York (Newman Fitch Altheim Myers, P.C., New York, New York, of counsel), for Plaintiff–Appellant.

John Whitfield, Ossining, New York, filed a brief as pro se Plaintiff–Appellant.

Susan B. Eisner, Law Apprentice, New York, New York (Robert A. Forte, Deputy Solicitor General, Michael S. Belohlavek, Assistant Solicitor General, Eliot Spitzer, Attorney General of the State of New York, New York, New York, of counsel), for Defendants–Appellees.

* Hon. John F. Keenan, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

268

right of effective access to the courts, as well as of his last farthing.

John Whitfield (plaintiff or appellant), an inmate in the custody of the New York Department of Correctional Services (Department), appeals an order entered October 5, 1998 in the United States District Court for the Southern District of New York before Judge Denny Chin. The order concludes that taxing litigation costs against plaintiff, payable to defendants former Superintendent Charles Scully, Deputy Superintendent Gail Haponik, and Correctional Officers Jack Tornabene and Craig Mitchell, is appropriate. Whitfield contends on appeal that it was an abuse of discretion to authorize the taxation of costs against him, for the reason that such authorization did not comply with the applicable rules of procedure or take into proper equitable account the meager income he earns per week while incarcerated. Appellant further argues that the Department's recoupment of 40 percent of that weekly income for repayment of the taxable costs violates the cost collection provisions of the *in forma pauperis* statute, 28 U.S.C. § 1915 (1994 & Supp. IV 1999).

## BACKGROUND

On May 6, 1994 Whitfield, an inmate at Green Haven Correctional Facility, filed this suit *pro se*, pursuant to 42 U.S.C. § 1983, in the Southern District of New York. In his complaint plaintiff alleged that defendants Scully, Haponik, Tornabene, and Mitchell violated his Eighth Amendment rights by failing to protect him from another prison inmate and, at a disciplinary hearing arising from an earlier altercation with that inmate, violated his Due Process rights. Plaintiff was granted permission to proceed in the litigation *in forma pauperis*.

The district court granted defendants' motion for summary judgment and dismissed Whitfield's complaint. *See Whitfield v. Scully*, No. 94 Civ. 3290, 1996 WL 706932 (S.D.N.Y. Dec.6, 1996). Whitfield's motion to reargue was denied. *See White-*field *v. Scully*, No. 94 Civ. 3290, 1997 WL 223079 (S.D.N.Y. May 5, 1997). We affirmed. *See Whitfield v. Scully*, No. 97–2304, 164 F.3d 620, 1998 WL 681279, at *1 (2d Cir. Feb.5, 1998) (summary order).

On February 24, 1998 the Clerk of Court for the Second Circuit, as requested in the bill of costs submitted by defendants, entered a judgment taxing $711.40 in printing costs against Whitfield for appellate briefs and appendices. Whitfield promptly filed objections to this award of costs. On April 28, 1998 our mandate, silent as to costs, issued to the district court. On May 21, 1998 a deputy clerk in the Southern District of New York entered a judgment taxing $595.96 against Whitfield as requested by defendants under Local Civil Rule 54.1 to defray the stenographic charges incurred while deposing Whitfield. At the same time, the deputy clerk left blank the space on the entry sheet that would have provided for the taxation of costs had they been included in the circuit mandate.

Acting according to its standard operating procedures, the New York State Department of Correctional Services treated the district court's deposition taxation of $595.96 and the appellate printing taxation of $711.40 as separate judgments, and began recouping payments from Whitfield's prison account to satisfy those judgments. Pursuant to those procedures, the Department recoups 20 percent of all incoming receipts to be credited toward each outstanding judgment on a monthly basis, unless the account balance drops below ten dollars, in which case no collection is made until the balance again exceeds ten dollars. At the same time, under Department policy, no more than two encumbrances are collected at a given time; therefore, even if additional judgments or fees were outstanding, the total rate of recoupment would never exceed 40 percent. Thus, the Department currently collects a total of 40 percent or $3.10 of Whitfield's total weekly earnings of $7.75, and at this rate (not accounting for outside gifts or for time

taken off from work) Whitfield can expect to repay the district court deposition costs in slightly more than seven years and the larger appellate printing costs in a little less than nine years.

On August 19, 1998 Whitfield moved in the district court for review of the district clerk's taxation of costs. In his affidavit in support of the motion, plaintiff noted that his claims on the merits of the action had not been frivolous and had been filed in good faith. He also contended that the taxation imposed an undue hardship on his ability to purchase necessary commissary items such as shampoo or stamps to send mail to his family, and to contribute to the NAACP and certain prison organizations that he supports. In sum, he maintained that such taxation of costs created deterrent effects that impinged on his right of access to the courts and contradicted the spirit of the *in forma pauperis* statute, 28 U.S.C. § 1915.

In an order dated October 2, 1998 the district court denied Whitfield's motion for review, reasoning simply that the taxation of costs was "appropriate." *Whitfield v. Scully,* No. 94 Civ. 3290, slip op. at 1 (S.D.N.Y. Oct. 2, 1998) (citing *Glucover v. Coca–Cola Bottling Co.,* No. 91 Civ. 6331, 1996 WL 1998, at *2 (S.D.N.Y. Jan.3, 1996)). Meanwhile, Whitfield's February 1998 objections to appellate printing costs were referred to the merits panel that had affirmed summary judgment, and were deemed by that panel to be a motion to disallow those costs. Whitfield's objections were denied in an unpublished order. *See Whitfield v. Scully,* No. 97–2304 (2d Cir. Dec.13, 1999).

Whitfield filed a notice of appeal from the district court's denial of his challenge to the costs imposed, and we appointed counsel to represent him. That appeal is now before us.

## DISCUSSION

### I Standard of Review

A district court reviews the clerk's taxation of costs by exercising its own discretion to "decide the cost question [it]self." *Farmer v. Arabian Am. Oil Co.,* 379 U.S. 227, 233, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964). An appellate court, in turn, reviews a district court's order taxing costs for abuse of discretion. *ARP Films, Inc. v. Marvel Entm't Group, Inc.,* 952 F.2d 643, 651 (2d Cir.1991). Whether the district court has the authority to award costs presents a question of law subject to *de novo* review. *Russian River Watershed Prot. Comm. v. City of Santa Rosa,* 142 F.3d 1136, 1144 (9th Cir.1998).

### II Taxation of Costs

#### A. Deposition Costs in the District Court

Rule 54(d) of the Federal Rules of Civil Procedure generally governs the taxation of costs against an unsuccessful litigant in federal district court.

> Costs Other than Attorneys' Fees. Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs.... Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

Fed.R.Civ.P. 54(d)(1).

Construing this provision, the Supreme Court has held that the term "costs" includes only the specific items enumerated in 28 U.S.C. § 1920 (1994). *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *accord United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 171 (2d Cir. 1996). That statute provides, in pertinent part

> A judge or clerk of any court of the United States may tax as costs the following:
>
> . . . .

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses; [and]

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case[.]

. . . .

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920. The courts of appeals have consistently interpreted this statute to permit the taxation of deposition expenses, when necessarily incurred for use of the deposition in the case. *See, e.g., In re Baby Food Antitrust Litig.*, 166 F.3d 112, 138–39 (3d Cir.1999). *See generally* 10 James Wm. Moore et al., *Moore's Federal Practice* ¶ 54.103[3][c][i], at 54–180 (3d ed.2000) (collecting circuit cases).

 In addition, because Rule 54(d) allows costs "as of course," such an award against the losing party is the normal rule obtaining in civil litigation, not an exception. *Mercy v. County of Suffolk*, 748 F.2d 52, 54 (2d Cir.1984). For this reason, the losing party has the burden to show that costs should not be imposed; for example, costs may be denied because of misconduct by the prevailing party, the public importance of the case, the difficulty of the issues, or the losing party's limited financial resources. *See Ass'n of Mexican Am. Educators v. California*, 231 F.3d 572, 592–93 & n. 15 (9th Cir.2000) (*en banc*); *Cantrell v. Int'l Bhd. of Elec. Workers*, 69 F.3d 456, 459 (10th Cir.1995) (*en banc*). As a general matter a district court may deny costs on account of a losing party's indigency, but indigency *per se* does not automatically preclude an award of costs. *See McGill v. Faulkner*, 18 F.3d 456, 459–60 (7th Cir.1994). In light of the general rule, when a prevailing party is denied costs, a district court must articulate its reasons for doing so. *See Cantrell*, 69 F.3d at 459.

On appeal, Whitfield challenges the district court's decision to tax deposition costs on the grounds that it failed not only to comply with Local Civil Rule 54.1 but also to take equitable account of his indigency.

### 1. *Local Civil Rule 54.1*

Local Civil Rule 54.1 permits district judges in the Southern District of New York to tax deposition costs, in pertinent part, as follows

Unless otherwise ordered by the court, the original transcript of a deposition, plus one copy, is taxable if the deposition was used or received in evidence at the trial, whether or not it was read in its entirety. *Costs for depositions are also taxable if they were used by the court in ruling on a motion for summary judgment or other dispositive substantive motion.* Costs for depositions taken solely for discovery are not taxable.

S.D.N.Y. & E.D.N.Y. Local Civ. R. 54.1(c)(2), *reprinted in* Second Circuit Redbook 1999–2000, at 271–72 (Vincent C. Alexander ed., 1999) (emphasis added).

Whitfield maintains that his deposition was not taxable because even though defendants submitted the transcript as an attachment to their summary judgment papers, the district court did not cite to it in the written decision granting summary judgment for defendants and therefore did not "use[ ]" the deposition in the sense contemplated by Local Civil Rule 54.1. We cannot adopt the construction appellant urges.

 To begin with, district courts have authority to enact Local Rules governing the conduct of the business before them, and such Local Rules have the force of law. *See Weil v. Neary*, 278 U.S. 160, 169, 49 S.Ct. 144, 73 L.Ed. 243 (1929); *Somlyo v. J. Lu–Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir.1991). We accord considerable deference to the district court's interpretation of its own Local

Rule. *See LoSacco v. City of Middletown,* 71 F.3d 88, 92 (2d Cir.1995). The plain language of the Rule's first sentence, providing that depositions are taxable if "used *or* received in evidence at the trial" (emphasis added), suggests that the word "use" extends well beyond· explicit reliance on the deposition as a basis for decision. In addition, the second and third sentences, allowing taxation if the deposition was "used by the court in a ruling on a motion for summary judgment" but not if "taken solely for discovery," further suggest an either-or dichotomy between depositions submitted in conjunction with a motion for summary judgment, on the one hand, and purely investigative depositions never actually submitted to the court for its use, on the other.

Whitfield protests that such a broad reading would invite abuse insofar as prevailing parties could render a deposition taxable simply by appending it to a motion for summary judgment, regardless of its pertinence to the litigation. Yet the filing of a deposition transcript necessarily means a court will "use" it, since summary judgment may be granted only "if the pleadings, *depositions,* answers to interrogatories, and admissions *on file,* . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (emphases added); *see also Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir.1995) (Fed.R.Civ.P. 56(c) provides for "a review of the entire record").

Even more to the point, however, is the fact that the discretion to tax such a deposition is still limited by 28 U.S.C. § 1920, which allows taxation· of costs only when the deposition was *"necessarily* obtained for use in the case" (emphasis added). *See Merritt Meridian Constr. Corp.,* 95 F.3d at 173 (no abuse of discretion where district court limited taxation of photocopying costs, given that prevailing party failed to itemize costs or to explain why additional copies were necessary un-

der 28 U.S.C. § 1920(4)); *see also* 28 U.S.C. § 2071(a) (1994) (court rules must be consistent with federal statutes); Fed. R.Civ.P. 83(a) (same); *Somlyo,* 932 F.2d at 1046 (same).

Our decision on which Whitfield relies most heavily supports this result. *See Harris v. Twentieth Century–Fox Film Corp.,* 139 F.2d 571 (2d Cir.1943). In *Harris,* we affirmed the district court's exercise of its discretion refusing to tax certain depositions not cited in its opinion granting summary judgment, where "nothing elsewhere in the record . . . indicate[d] that the contents of [those] depositions were in any way needed in connection with the motion for summary judgment, or in any manner affected the decision of the District Court." *Id.* at 572.

But *Harris* did not purport to interpret Local Rule 54.1, nor to hold that depositions not cited in a district court's ruling are not taxable. Rather, *Harris* looked to then-existing Rule 80(a) of the Federal Rules of Civil Procedure, which confirmed "the [district] court's discretion as to stenographers' fees where the evidence is taken in court." *Id.* at 573. *Harris* then reasoned that in light of Rule 80(a), "a fortiori, the court has such discretion as to such fees in connection with depositions." *Id.* We found no abuse of discretion, ruling that "[t]he trial court is better acquainted with the proceedings than we can be." *Id.* By emphasizing the district court's discretion to deny such deposition costs, *Harris* implicitly recognized the discretion to award costs as well, even though nothing in the record suggested the depositions were even needed. But *Harris* did reverse the district court to the extent that its discretion was constrained by a federal statute imposing minor, mandatory costs for depositions admitted into evidence. *See id.* (citing then 28 U.S.C. § 572).

In sum, we hold that the district court "used" Whitfield's deposition under Local Civil Rule 54.1 and, therefore, did not abuse its discretion in taxing the costs

of the deposition. A district court that rules on a motion for summary judgment must "use" a filed deposition transcript to determine whether there is any genuine issue as to any material fact. Such use provides a sufficient basis for the district court to tax costs on Whitfield, as long as the taxation of costs satisfies the relevant statutory limits such as § 1920. Because Whitfield does not maintain that the district court contravened those statutory limits, and because the trial court is in a better position than we are to assess the extent to which it "used" the instant deposition in ruling on defendants' summary judgment motion, the taxation of deposition costs may not be said to be an abuse of discretion.

### 2. *Indigency*

To the extent Whitfield contends the district court failed to take proper account of his indigency, his rights and obligations are governed by the federal *in forma pauperis* statute, 28 U.S.C. § 1915. *Feliciano v. Selsky,* 205 F.3d 568, 570–71 (2d Cir. 2000). As we recently explained, federal courts have long enjoyed authority to waive the payment of fees or security at the commencement of a civil suit by a plaintiff who demonstrates his inability to pay. *See id.* at 571. In 1996, however, "Congress amended [§ 1915] . . . relative to suits by prisoners who seek the benefits of [the *in forma pauperis*] provision." *Id.* (citing the Prison Litigation Reform Act of 1995, Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, § 804, 110 Stat. 1321, 1321–66, 1321–73 (1996)).

Pursuant to § 1915(a) as amended, a district court may authorize a prisoner to bring a civil action *in forma pauperis,* upon the prisoner's submission of an affidavit stating his assets and the nature of the action, as well as a certified copy of a prison account statement for the previous six months. *See* 28 U.S.C. § 1915(a)(1)-(2). Section 1915(b) provides that "the prisoner shall be required to pay the full

amount of a filing fee," and mandates collection, when funds exist, of an initial partial filing fee equal to 20 percent of the average monthly balances or deposits (whichever is greater) as shown on the prison account statement. *Id.* § 1915(b)(1), (4). Subsequent to this initial partial payment, the prisoner must make monthly payments equal to 20 percent of the income credited to his prison account in the preceding month, so long as the account balance is greater than ten dollars, until the fee has been paid in full. *See id.* § 1915(b)(2).

In addition, § 1915(f) governs the taxation and collection of costs against such a litigant as follows

(1) Judgment may be rendered for costs at the conclusion of the suit or action as in other proceedings. . . .

(2)(A) If the judgment against a prisoner includes the payment of costs under this subsection, the prisoner shall be required to pay the full amount of the costs ordered.

(B) The prisoner shall be required to make payments for costs under this subsection in the same manner as is provided for filing fees under subsection (a)(2).

(C) In no event shall the costs collected exceed the amount of the costs ordered by the court.

*Id.* § 1915(f). Although the statute refers to § 1915(a)(2) for the manner of payment, we have recognized that this reference is a typographical error (as it makes the statute unintelligible) and that the actual process for payment of costs is instead described in § 1915(b)(2). *See Feliciano,* 205 F.3d at 572 n. 1.

■■■■■ In this context, Whitfield insists the district court abused its discretion by failing to reduce or eliminate the award of costs on account of his limited financial means, particularly in light of his good faith and the fact that his suit was not dismissed as frivolous. But good faith and the absence of frivolous claims, by themselves, do not require a district court to

deny costs, let alone require an appellate court to vacate a district court's award of costs. *See AeroTech, Inc. v. Estes,* 110 F.3d 1523, 1527 (10th Cir.1997) (finding that a denial of costs is not warranted simply because a lawsuit was not brought in bad faith, since "[a]ll parties to a federal action have an obligation to act in good faith and with proper purpose"). *See generally* 10 James Wm. Moore et al., Moore's Federal Practice ¶ 54.101[1][b], at 54–152 (3d ed.2000) (collecting circuit decisions). There is also widespread agreement among the courts of appeals that indigency *per se* does not preclude an award of costs against an unsuccessful litigant, *see Feliciano,* 205 F.3d at 571, unless the United States is a party to the proceeding, *see Maida v. Callahan,* 148 F.3d 190, 193 (2d Cir.1998) (*per curiam*).

■■■■ Moreover, although district courts retain discretion to limit or deny costs based on indigency, *see McGill,* 18 F.3d at 459, the 1996 amendments to § 1915 have undercut the ability of prisoners to appeal an award of costs on the ground of indigency. Indeed, § 1915(f)(2)(A) as amended clearly states that "[i]f the judgment against a prisoner includes the payment of costs under this subsection, the prisoner *shall be required* to pay *the full amount* of the costs ordered" (emphases added). As the Sixth Circuit explained

When judgment is entered against a prisoner and costs against the prisoner are assessed, § 1915(f)(2)(A) now requires that the prisoner pay the costs either in full, or in accordance with the payment process set forth in § 1915(b)(2). The prisoner's ability to pay the costs is no longer an issue . . . .

Because a prisoner can no longer challenge the assessment of fees from the district court on the grounds that the prisoner is unable to pay the assessment, if a court chooses to tax a prisoner costs, the prisoner is required to pay the assessment in full.

*Talley–Bey v. Knebl,* 168 F.3d 884, 886–87 (6th Cir.1999) (citations omitted); *accord Feliciano,* 205 F.3d at 572. Accordingly, § 1915(f)(2)(A) restricts our authority to modify a district court's discretionary award of costs against a prisoner proceeding *in forma pauperis* on the ground that the prisoner is unable to pay.

Whitfield complains that this result is inconsistent with our earlier decision in *In re Epps,* 888 F.2d 964 (2d Cir.1989). In *Epps,* we issued a writ of mandamus directing the district court to reduce an indigent prisoner's filing fee from $18.47 to $6, in light of the Supreme Court's admonition that "[t]he discretion conferred on district judges by section 1915 . . . be exercised so as not to deprive litigants of the 'last dollar they have.'" *Id.* at 967 (quoting *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 339, 69 S.Ct. 85, 93 L.Ed. 43 (1948)). But filing fees are conceptually distinct from costs. Filing fees are collected by the court at the outset of litigation even from plaintiffs who will ultimately prevail, whereas costs are awarded only at the end of litigation as a matter of equity to the prevailing party. Moreover, even if *Epps* could be read to establish our statutory authority to limit a district court's discretion in setting costs by reference to a litigant's indigency, that authority has been reduced by Congress' subsequent enactment of § 1915(f)(2)(A), as explained above.

■■■ In his *pro se* appellate brief, Whitfield further protests that § 1915 as applied by the trial court to the facts of his case impinges on his constitutional right of access to the courts by unduly deterring him from filing civil actions in the future because of the threat that similar, additional costs could be imposed. We find no merit in this challenge. "'Requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state.'" *Nicholas v. Tucker,*

114 F.3d 17, 21 (2d Cir.1997) (quoting *Roller v. Gunn,* 107 F.3d 227, 233 (4th Cir. 1997)) (rejecting similar challenge to mandatory filing fee provision in § 1915(b)).

▇ Again, it was not an abuse of the district court's discretion to tax $595.96 in deposition costs against Whitfield, despite his claim of indigency.

## B. *Costs on Appeal*

Whitfield also appeals the taxation of $711.40 in appellate printing costs by the circuit clerk on the ground that defendants waived these costs by failing to request that the district clerk include them in the final judgment.

Rule 39 of the Federal Rules of Appellate Procedure governs the taxation of appellate costs. That Rule states that "if a judgment is affirmed, costs [of the appeal] are taxed against the appellant," "unless the law provides or the court orders otherwise." Fed. R.App. P. 39(a)(2). The Rule also expressly permits taxation of "the cost of producing necessary copies of a brief or appendix," Fed. R.App. P. 39(c), and outlines the procedures to be followed by a party seeking to have appellate costs taxed, *see* Fed. R.App. P. 39(d)-(e)'. Under Rule 39(d), a party seeking to have appellate costs taxed must file an itemized bill of costs with the circuit clerk within 14 days after entry of judgment. Fed. R.App. P. 39(d)(1). Any objections, in turn, must be filed within 10 days after service of the bill of costs. Fed. R.App. P. 39(d)(2). Upon the circuit clerk's approval of the bill of costs, Rule 39(d) contemplates that any costs so approved will be incorporated by the circuit clerk into that court's mandate and then by the district clerk into the final judgment

(3) The [circuit] clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs. If the mandate issues before costs are finally determined, the district clerk must—upon the circuit clerk's request—add the statement of costs, or any amendment of it, to the mandate.

Fed. R.App. P. 39(d)(3).

In the Southern District of New York, Local Civil Rule 54.1 requires "any party seeking to recover costs" to file with the district clerk a request to tax costs "[w]ithin thirty (30) days after the entry of final judgment, or, in the case of an appeal by any party, within thirty (30) days after the final disposition of the appeal, unless this period is extended by the court for good cause shown." S.D.N.Y. & E.D.N.Y. Local Civ. R. 54.1(a), *reprinted in* Second Circuit Redbook 1999–2000, at 271 (Vincent C. Alexander ed., 1999). The Rule further provides that "[a]ny party failing to file a request to tax costs within this thirty (30) day period will be deemed to have waived costs." *Id.*

▇ In the present litigation, the circuit clerk did not include the appellate printing costs in this Court's mandate of April 28, 1998, presumably because Whitfield had filed objections to those costs in February 1998, so that the appellate printing costs were not "finally determined" until the motions panel rejected appellant's objections in December 1999. Thus, Whitfield's waiver argument must fail, since, even assuming *arguendo* that defendants had a duty under Local Civil Rule 54.1 to request that these costs be included in the judgment entered on May 21, 1998, defendants' failure to do so was excusable because these costs were in dispute until December 1999. Moreover, Rule 39(d)(3) provides a simple remedy insofar as this Court may direct the circuit clerk to request that the district clerk add the statement of appellate costs to the mandate.

▇ Whitfield's counsel has explicitly disclaimed any intent to challenge the equity of this Court's taxation of appellate printing costs. Indeed, Whitfield's *pro se* appellate brief indicates this issue was instead presented to the earlier merits panel and his brief on the instant appeal attacks

only the district court's decision with respect to costs. Hence, the equities of our taxation of appellate costs has not been raised on this appeal, and we decline to reach that issue. Moreover, to the extent Whitfield attacks the district court's actions, a district court generally lacks authority over appellate costs not specifically mentioned in Fed. R.App. P. 39(e). *See Haroco, Inc. v. Am. Nat'l Bank & Trust Co.*, 38 F.3d 1429, 1440 (7th Cir.1994) (appellate printing costs); *Johnson v. Pac. Lighting Land Co.*, 878 F.2d 297, 298 (9th Cir.1989) (citing *Lerman v. Flynt Distrib. Co.*, 789 F.2d 164, 166–67 (2d Cir.1986)). Judge Chin's refusal to modify the award of appellate costs was therefore entirely proper.

Accordingly, the circuit clerk should be directed to request that the district clerk add the statement of $711.40 in appellate printing costs to the mandate.

### III Collection of Costs and Filing Fees

Whitfield further challenges the manner of cost collection employed by the New York Department of Correctional Services on the ground that collection of multiple encumbrances at a total rate of 40 percent of his monthly receipts violates the statutory scheme set forth in 28 U.S.C. § 1915. In his *pro se* appellate brief, he points out that a separate filing fee of $105 has recently been imposed by the district court as a separate encumbrance on his account, and that additional filing fees will inevitably be imposed pursuant to § 1915(b)(1) for each of his two appeals to this Court. As discussed above, the Department's standard procedures permit collection of only two encumbrances at a total rate of 40 percent at any one time. Thus, the Department presently continues to collect the two awards of district court and appellate costs, and as each of those awards is satisfied, the Department will then begin to collect each of the outstanding filing fees, until only the last two filing fees are subject to collection.

Whitfield argues that this manner of collection violates the plain language of § 1915(b)(2), which in his view permits the recoupment of receipts at a maximum rate of only 20 percent of a prisoner's monthly income. The Department, in response, contends that the statute would permit recoupment of up to 100 percent of monthly receipts, were it not for the Department's voluntary policy of limiting the recoupment rate to 40 percent. Even though similar arguments were presented to the district court, that court chose not to decide the issue explicitly. Under the circumstances, because the undisputed facts support Whitfield's contentions, and because the parties have already briefed the legal question of collection rates under § 1915, it therefore is appropriate for us to resolve this question in the first instance, rather than remanding it to the district court. *See Stone v. Williams*, 970 F.2d 1043, 1061 (2d Cir.1992).

#### A. *Text and Structure of § 1915*

To resolve this issue, we begin by examining the text and structure of the statute, *see Connecticut v. U.S. Dep't of the Interior*, 228 F.3d 82, 88 (2d Cir.2000), keeping in mind the Supreme Court's admonition that § 1915 should be applied "so as not to deprive litigants of the 'last dollar they have,'" *Epps*, 888 F.2d at 967 (quoting *Adkins*, 335 U.S. at 339, 69 S.Ct. 85).

As we have already explained, § 1915(b) governs the collection of filing fees. That subsection dictates that the prisoner make an initial partial payment "of any court fees" followed by monthly payments recouped as a percentage of the prisoner's receipts:

> (1) ... [I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as partial payment of any court fees required by law, an initial partial filing fee of 20 percent. ...

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(1)-(2).

In a separate subsection, § 1915 also governs the collection of any costs when included in a "[j]udgment ... rendered ... at the conclusion of the suit or action." *Id.* § 1915(f)(1). Nonetheless, this later subsection expressly refers back to the fee collection provision in specifying the manner by which costs are to be paid: "The prisoner shall be required to make payments for costs under this subsection in the same manner as is provided for filing fees under subsection (a)(2)." *Id.* § 1915(f)(2)(B). We re-emphasize that the reference to subsection (a)(2) reflects a typographical error, as noted earlier, since it is subsection (*b*)(2), quoted above, that governs the payment of filing fees.

In sum, § 1915 contains two separate provisions—subsections (b) and (f)—for the collection of filing fees and the collection of costs, but mandates that collection under each of these provisions proceed in the same manner. In light of the multiple costs and filing fees for which Whitfield is (or soon will be) liable, the questions raised by these provisions are twofold: first, whether the recoupment rate cumulates by 20 percent for each outstanding encumbrance as collection proceeds in simultaneous fashion, or else remains constant at 20 percent as each encumbrance is satisfied in sequential fashion; and second, if the rate remains constant, whether this 20 percent ceiling applies to the collection of fees and costs considered as a single, consolidated sum, or else applies to the collection of fees and the collection of costs considered separately under § 1915(b) and (f).

## B. *Sequential Versus Simultaneous Collection*

On the question whether multiple encumbrances should be collected sequentially or simultaneously, the text and structure of § 1915 fail to provide a definitive answer. On the one hand, the references to an initial partial payment of "any court fees," 28 U.S.C. § 1915(b)(1), and to the imposition of a single "[j]udgment" for costs at the end of a suit, *id.* § 1915(f)(1), imply that multiple fees and costs should each be subject to a uniform ceiling. The statute's specification of a single rate of payment of 20 percent also suggests that Congress intended that rate to serve as a uniform ceiling, in a compromise between the imperative to collect fees and costs and the right of prisoners to effective access to the courts. *See Tucker v. Branker,* 142 F.3d 1294, 1298 (D.C.Cir.1998) ("In sum, the payment requirement of the PLRA never exacts more than 20% of an indigent prisoner's assets or income."). On the other hand, the directive that "the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income" in subsection (b)(2) could plausibly be read to require recoupment on a per-encumbrance basis. *See Newlin v. Helman,* 123 F.3d 429, 436 (7th Cir.1997) ("A prisoner who files one suit remits 20 percent of income to his prison trust account; a suit and an appeal then must commit 40 percent, and so on."), *overruled in other part by Walker v. O'Brien,* 216 F.3d 626, 628–29 & n. 1 (7th Cir.2000), *and by Lee v. Clinton,* 209 F.3d 1025, 1026–27 (7th Cir.2000).

Under the latter reading of § 1915(b)(2), however, the simultaneous collection of multiple encumbrances could potentially expose 100 percent of a prisoner's income to recoupment. In the present case, for example, Whitfield's filing fees for the initial complaint and two appeals, plus the two awards of costs against him, could create five encumbrances subject to recoupment at a total rate of 100 percent.

*See Newlin,* 123 F.3d at 436 ("Five suits or appeals mean that the prisoner's entire monthly income must be turned over to the court until the fees have been paid."). Yet, this result arguably could pose a serious constitutional quandary as to whether an unreasonable burden had been placed on the prisoner's right of meaningful access to the courts, especially with respect to the collection of filing fees. *See Tucker,* 142 F.3d at 1297–98. We do not purport to imply that mandatory recoupment of 100 percent of a prisoner's monthly receipts would necessarily be unconstitutional, but only that such recoupment could raise serious concerns.

The Department concedes its reading of § 1915 would expose 100 percent of a prisoner's income to recoupment, but nonetheless maintains that because it collects no more than two encumbrances at a total rate of 40 percent at any given time, the potential constitutional problem will never materialize. We decline the Department's suggestion. In the first place, it is not entirely clear that § 1915(b)(2) permits such voluntary limits on collection rates, given its mandatory language that "the prisoner *shall* be required to make monthly payments of 20 percent" and that the "agency having custody of the prisoner *shall* forward payments . . . to the clerk of court" (emphases added). But even were the potential constitutional question avoidable, the statutory question is not, and we cannot turn a blind eye to the foreseeable effects of our ruling on prisoners in other, perhaps less benevolent, state prison systems.

Addressing precisely this statutory question, the Seventh Circuit has read § 1915 to require simultaneous rather than sequential payment of multiple encumbrances, relying largely on two arguments. *See Newlin,* 123 F.3d at 436. The Seventh Circuit reasoned that under a sequential payment scheme, "a prisoner could file multiple suits for the price of one, postponing payment of the fees for later-filed suits until after the end of imprisonment (and

likely avoiding them altogether)." *Id.* Further, it thought that "[u]nless payment begins soon after the event that creates the liability," the prisoner will avoid "bear[ing] some marginal cost for each legal activity," thus frustrating the statute's objective. *Id.; see also Johnson v. McNeil,* 217 F.3d 298, 302 (5th Cir.2000) (*per curiam*) (allowing for the collection of costs pursuant to the process described in § 1915(b)(2) "in addition to any deductions made to pay filing fees that the inmate might owe"). *But see also Tucker,* 142 F.3d at 1298 (D.C.Cir.) (contrary to *Newlin* but in dicta).

We think these arguments do not carry the day. Granted, the mandatory payment provisions of § 1915(b) and (f) do not apply to a released prisoner. *See McGann v. Comm'r, Soc. Sec. Admin.,* 96 F.3d 28, 30 (2d Cir.1996). But neither is a prisoner absolved of liability immediately upon release, since such a person remains subject to the generally applicable *in forma pauperis* provisions of § 1915. *See id.* Although the resulting delay in payments may create less of an incentive for prisoners not to litigate, that alternative is far preferable to adopting a construction of the statute that could render it unconstitutional. Our resolution of this question therefore must be guided by the principle that we should "avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." *Gomez v. United States,* 490 U.S. 858, 864, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). Here there is such a reasonable alternative.

Consequently, we conclude that 28 U.S.C. § 1915(b)(2) generally requires the recoupment of multiple encumbrances in sequential fashion at a constant rate of 20 percent of monthly receipts to the prisoner's account.

### C. *Filing Fees Versus Costs*

We next turn to the second question, namely, whether this 20–percent ceil-

ing applies to the collection of filing fees and the collection of costs taken together or considered separately. The Seventh Circuit had no occasion to pass upon this question in *Newlin,* since that case involved only the collection of district court and appellate court filing fees. 123 F.3d at 435–36. The D.C. Circuit implicitly decided this question in favor of consolidated collection, however, when it stated in *Tucker* that the statute "never exacts more than 20% of an indigent prisoner's assets or income." 142 F.3d at 1298.

With all due respect to the D.C. Circuit, we believe the text and structure of § 1915 militate in favor of a different interpretation. As discussed earlier, the statute contains two separate provisions for the collection of filing fees and the collection of costs, codified in subsections (b) and (f) of § 1915. Moreover, the text linking these two provisions preserves this distinction when it states that "[t]he prisoner shall be required to make payments for costs *under this subsection* in the same manner as is provided for filings *under subsection ([b])(2).*" 28 U.S.C. § 1915(f)(2)(B) (emphasis added). The existence of two distinct collection provisions, further emphasized by the text of subsection (f)(2)(B), strongly supports reading the statute to require that a prisoner pay 20 percent of any monthly income for filing fees imposed, and another 20 percent for costs incurred.

Subjecting a prisoner to two separate ceilings—one for filing fees and one for costs—furthers the incentives that Congress sought to create in enacting the Prison Litigation Reform Act. As we have noted, "Congress adopted the Prison Litigation Reform Act with the principal purpose of deterring frivolous prisoner lawsuits and appeals." *Nicholas,* 114 F.3d at 19. With two separate ceilings, a prisoner has a relatively strong incentive to drop a frivolous lawsuit after he has filed the suit because, immediately after an adverse judgment, he could have to pay an additional 20 percent of his monthly income for

costs arising from the suit. *Cf. Newlin,* 123 F.3d at 436 ("The [Prison Litigation Reform Act] is designed to require the prisoner to bear some marginal cost for each legal activity."). With one ceiling, a prisoner would have less incentive to drop a frivolous lawsuit because, no matter what costs are ultimately imposed on him, only 20 percent of his monthly income would be subject to recoupment—an amount already exposed to recoupment for filing fees.

Accordingly, we further determine that 28 U.S.C. § 1915(b)(2) permits the recoupment of up to 40 percent of a prisoner's monthly income at any given time—20 percent for filing fees under § 1915(b) and an additional 20 percent for costs under § 1915(f).

### D. *Remaining Arguments*

Because we conclude that § 1915(b)(2) creates a uniform, 20 percent ceiling and that this ceiling applies to the collection of costs under § 1915(f), we need not address Whitfield's argument that the Department's collection of district court costs and appellate costs as multiple "judgments" violates the text of 28 U.S.C. § 1915(f) and Federal Rule of Appellate Procedure 39. Regardless of whether those awards of costs are deemed a single judgment or multiple judgments, § 1915 limits their collection to a flat rate of 20 percent of Whitfield's monthly income.

### CONCLUSION

Accordingly, for the reasons stated, the district court's taxation of $595.96 in deposition costs is affirmed. The circuit clerk is directed to request that the district clerk add the statement of $711.40 in appellate printing costs to the mandate, consistent with Federal Rule of Appellate Procedure 39(d)(3). We also conclude that the *in forma pauperis* statute, 28 U.S.C. § 1915, permits the recoupment of filing fees and costs at a total rate of 40 percent of a prisoner's monthly income–20 percent for fees and 20 percent for costs. This case is therefore remanded to the district

court for the entry of an order consistent with this opinion.