**Patrick NELSON, Plaintiff,**

v.

**C.O. F. EAVES; Lt. Wilk; C.O. Smith of S. and X Gallery, Defendant.**

**No. 99 CIV. 9553 (DC).**

United States District Court,
S.D. New York.

May 3, 2001.

Patrick Nelson, Southport Correctional Facility, Pine City, NY, for Plaintiff Pro Se.

Eliot Spitzer, Attorney General of the State of New York, By Bruno V. Gioffre, Jr., Assistant Attorney General, New York City, for Defendants.

### MEMORANDUM DECISION

CHIN, District Judge.

In this prisoner's civil rights case, plaintiff *pro se* Patrick Nelson wrote a series of letters to the Assistant Attorney General previously assigned to this case. The let-

ters were sexually graphic, threatening in tone, and completely inappropriate. In view of these letters, I issued an order on April 5, 2001, directing Nelson to show cause why this case should not be dismissed, with prejudice, and other sanctions imposed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and this Court's inherent power. Nelson responded, but his response is unsatisfactory. Accordingly, the complaint is dismissed, with prejudice.

### FACTS

This prisoner civil rights case was filed, pursuant to 42 U.S.C. § 1983, on September 8, 1999. Nelson's request to proceed *in forma pauperis* was granted and the filing fee was waived. The complaint seeks damages based on three alleged incidents that occurred when Nelson was incarcerated at Sing Sing Correctional Facility: (1) on March 30, 1999, two corrections officer purportedly subjected Nelson to an unprovoked beating outside his cell; (2) on April 27, 1999, an officer allegedly assaulted Nelson in his cell and confiscated his radio; and (3) on May 3, 1999, an unidentified person purportedly put drugs (PCP) into Nelson's food, as the result of which he apparently spent two weeks in a "Mental Hospital."

Defendants moved to dismiss on the grounds Nelson had failed to exhaust his administrative remedies. They later withdrew the motion and filed an answer to the complaint. The parties thereafter engaged in discovery. Nelson was deposed on December 7, 2000, by the Assistant Attorney General previously assigned to this case (the "prior AAG"). A copy of the 162–page transcript of the deposition has been provided to and reviewed by the Court.

By letter dated April 4, 2001, the prior AAG advised the Court that Nelson had been sending her "inappropriate correspondence." (4/4/01 Letter, p. 1). She reported that she had been reluctant to "burden the Court with this matter," but eventually decided to write because Nelson's letters had become "increasingly sexually graphic." (*Id.*). She submitted one of Nelson's letters, dated March 25, 2001, for the Court's review. She also advised that the case had been reassigned to a different Assistant Attorney General. (*Id.*).

Nelson's March 25, 2001, letter was indeed inappropriate and sexually graphic. For example, the letter, which is addressed to the prior AAG by her first name, states:

> Do you really want to be with me. I mean that's what I want to know. I'm saying, your 26 years old. I don't know if you're a virgin. But your a freak. You got a naughty mind, and so do I. I day dream about you all the time, going places and doing things, especially doing things . . . . .

(3/25/01 Letter, p. 1). The letter continues and becomes even more sexually graphic and crude. At one point, the letter takes on a threatening tone, as Nelson writes: "I should kill you, but I won't. I'm a let you go." (*Id.*, p. 5). At another point in the letter, referring to the prior AAG by name, Nelson writes: "Your too bold . . . the brave always dies first." (*Id.*, p. 6).

The Court immediately issued an order to show cause, directing Nelson to show cause why his complaint should not be dismissed, with prejudice, and other sanctions imposed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and this Court's inherent power.

At the same time, the Court asked the Attorney General's Office to submit the additional letters that Nelson had sent to the prior AAG. In response, on April 6, 2001, the Attorney General's Office submitted eight additional letters that Nelson had sent to the prior AAG in February

and March of 2001. These letters also contain inappropriate language, including profanity and a reference to the Court as a "Ching Fu Young Judge." (3/21/01 Letter, p. 1).[1]

Nelson responded to the order to show cause by submitting a letter dated April 20, 2001. He makes no effort to explain his letters to the prior AAG; instead, he responds simply as follows:

> Me and [the prior AAG] has been secretly communicating through our letters about this case or should I say through this case. I met her and somehow we started likeing each other. But in all actuality, she was playing with my mind and when I got serious she gave me up. So I'm a leave that alone ....

(4/20/01 Letter, p. 1). Nelson also advises in the letter that "right now I'm at Marcy Mental Hospital." (*Id.*).

By letter dated May 1, 2001, the Attorney General's Office advised the Court that Nelson had left two telephone voice mails for the prior AAG on May 1, 2001. In the first message, Nelson asked that the prior AAG provide him with information concerning the summary judgment motion that defendants were scheduled to file. In the second message, Nelson asked the prior AAG to comment on the Court's order to show cause. Nelson left these messages for the prior AAG even though the prior correspondence and this Court's order to show cause made it clear that the

case had been reassigned to a different Assistant Attorney General.

The Attorney General's May 1st letter also advised that Nelson has been hospitalized at the Central New York Psychiatric Center in Marcy, New York, since April 11, 2001. At the time of his deposition on December 7, 2000, he was not having any medical problems nor was he taking any medication, although he also testified that he was suffering from some stress. (Dep. at 4–5, 47, 155). He testified that he did not have a history of psychiatric illness. (*Id.* at 31). He also testified, however, that at some point he was taking a medication for depression, and that at another point he was seeing a mental health counselor. (*Id.* at 40, 43–44). In general, Nelson's deposition testimony was intelligent, responsive, and perfectly coherent; there was nothing remarkable or unusual about it, except perhaps for his assertion that on one occasion someone put PCP into his food, causing him to suffer from "flashes" that put him in Marcy Hospital. (*Id.* at 153).

When he was deposed on December 7, 2000, Nelson was housed at Southport Correctional Facility, although he had been moved temporarily to Downstate Correctional Facility for the deposition. (*Id.* at 14–15). He has also been housed at Clinton, Upstate, and Sing Sing Correctional Facilities, and had also previously

---

1. *See, e.g.,* 3/20/01 Letter, p. 1 ("How are you doing sweetheart? ... Love you."); 3/17/01 Letter, p. 1 ("Why didn't you respond to me about that. Now fuck that....I don't want to get on some real personal shit and start really dislikeing you like we got a problem like I hate you or something."); 3/15/01 Letter, p. 1 ("Send me a copy of the HIV results. I know it's negative. I just want it on paper. I wanted to use it as evidence to show a young lady. So when it's time to get my love on I know I'm safe if I decide to go raw."); 3/2/01 Letter, p. 1 ("Listen, you is a bad motherfucker. It took me a minute to figure it out. But

I peeped the scene. Yo, you is a real sweetheart."); 2/25/01 Letter, p. 1 ("Yo, did you see the movie Hannibal. You got to see that movie ....Then again I don't know if you'll like it. Yeah, you'll like it. F.B.I. agents. Serial killer, blood, and cannibalism. Yeah, that's right up your alley. Smile. Just kidding.").

By letter dated April 26, 2001, the Attorney General's Office submitted yet another letter sent by Nelson, dated April 15, 2001, to the prior AAG. The April 15th letter also contains inappropriate language.

spent two months at the Marcy facility. (*Id.* at 15–16).

Nelson testified that he is serving a seven-year prison term for assault in the first degree, and will be released as early as April 26, 2004. (*Id.* at 11). He was previously convicted of criminal possession of a weapon in the third degree, for which he was sentenced to a term of imprisonment of one to three years. (*Id.* at 12). He apparently also was convicted for yet another weapons violation, for which his sentence is running concurrently with his sentence for the assault conviction. (*Id.* at 14).

### DISCUSSION

■ The *in forma pauperis* statute, 28 U.S.C. § 1915, is intended "to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Hence, the statute permits a litigant to commence a lawsuit without paying a filing fee by filing an affidavit stating that he or she is unable to pay the costs of the suit. 28 U.S.C. § 1915(a). Because such a litigant, "whose filing fees and court costs are assumed by the public, ... lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits," *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827, the federal courts are authorized to dismiss a suit filed *in forma pauperis* "at any time" if the Court determines that the action is "frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i). *See Crawford–El v. Britton,* 523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (§ 1915(e)(2) is a "tool[ ] ... available in extreme cases to protect public officials from undue harassment").

■ On the record before me, even assuming Nelson has one or more meritorious claims, I conclude that he is prosecuting this case maliciously. I reach this conclusion for the following reasons.

First, Nelson has written abusive, demeaning, and threatening letters to the prior AAG. The language of the letters reveals malice and an intent to harass. It is apparent that Nelson is simply entertaining himself—and abusing the judicial system in the process. *See Greig v. Goord,* 169 F.3d 165, 167 (2d Cir.1999) (quoting Senators Dole and Kyl that filing lawsuits "has become a recreational activity for long-term residents of our prisons" to gain "a short sabbatical in the nearest Federal courthouse") (internal quotation marks omitted).

Second, Nelson's inappropriate and crude comments were not isolated. Indeed, they were repeated throughout ten letters written to the prior AAG over a period of more than two months. They escalated in tone, becoming more sexually graphic and threatening.

Third, Nelson continued to try to contact the prior AAG even after I issued the order to show cause. Even after it had become clear that the case had been reassigned to another Assistant Attorney General and that the prior AAG was no longer responsible for the matter, Nelson telephoned her. He even left a message asking her to comment on the order to show cause.

These circumstances demonstrate clearly that Nelson is acting maliciously.

I pause only to consider whether Nelson's actions are the result not of malice but of mental illness. The issue arises because he is now housed in Marcy Hospital and there is some evidence to suggest the possibility of psychiatric illness. I am convinced, however, from Nelson's letters, his deposition testimony, and all the circumstances before me that he is mentally competent and that he knew precisely what he was doing when he wrote the letters to the prior AAG. Although he apparently has suffered from stress and de-

pression and was taking medication at some point in the past, he denies a history of mental illness. Although he has had two stays at Marcy Hospital, for the majority of his incarceration he has been housed in nonmedical facilities. Most importantly, his deposition testimony was intelligent, responsive, and completely cogent.

In *Crawford–El,* Justice Kennedy made the following observation about the difficulties presented by prisoner civil rights litigation:

> Prisoner suits under 42 U.S.C. § 1983 can illustrate our legal order at its best and its worst. The best is that even as to prisoners the government must obey always the Constitution. The worst is that many of these suits invoke our basic charter in support of claims which fall somewhere between the frivolous and the farcical and so foster disrespect for the laws.
>
> We must guard against disdain for the judicial system.

523 U.S. at 601, 118 S.Ct. 1584 (Kennedy, J., concurring).

Here, through his repeated inappropriate actions, Nelson has shown his disdain for the judicial system. Accordingly, his complaint will be dismissed, with prejudice.

## CONCLUSION

For the foregoing reasons, the Clerk of the Court shall enter judgment:

1. dismissing the complaint, with prejudice;

2. awarding costs, including expenses related to the taking of Nelson's deposition, to defendants, pursuant to 28 U.S.C. § 1915(f);[2] and

3. forever enjoining Nelson from contacting or attempting to contact the prior AAG, directly or indirectly, orally, in writing, electronically, or otherwise.

SO ORDERED.

---

2. The New York State Department of Corrections may collect the costs in accordance with

§ 1915(b). *See generally Whitfield v. Scully,* 241 F.3d 264, 275–78 (2d Cir.2001).