**Felice MILLER, Plaintiff–Appellant–Cross–Appellee,**

v.

**BATESVILLE CASKET COMPANY, INC., Defendant–Appellee–Cross–Appellant.**

Nos. 07–3542–cv(L), 07–3745–cv(xap).

United States Court of Appeals, Second Circuit.

Feb. 26, 2009.

Arnold Koenig, Koenig & Samberg, Esqs., Mineola, NY, for Plaintiff–Appellant.

Sharon P. Margello, Jan Michelson, Ogletree Deakins, Nash Smoak & Stewart, P.C., Morristown, NJ, for Defendant–Appellee.

PRESENT: Hon. JOSEPH M. McLAUGHLIN, Hon. GUIDO CALABRESI, Hon. DEBRA ANN LIVINGSTON, Circuit Judges.

## SUMMARY ORDER

Plaintiff–Appellant Felice Miller ("Miller") appeals from a judgment of the United States District Court for the Eastern District of New York (Irizarry, J.) dismissing her claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, a claim under the Equal Pay Act, 29 U.S.C. § 206(d), and various state law claims. Defendant–Appellee Batesville Casket Company, Inc. ("BCC") cross appeals from the district court's decision not to award costs. We assume the parties' familiarity with the facts, procedural history, and scope of the issues presented on appeal.

## I. Miller's Appeal

In order to grant BCC's motion for summary judgment, the district court was required to find that "no genuine issue as to any material fact [exists] and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A "genuine" dispute is one for which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 45 (2d Cir.2000) (internal quotation marks omitted), and a "material" fact is one that "might affect the outcome of the suit under the governing law." *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir.2004) (internal quotation marks omitted). The summary judgment inquiry requires viewing the record in the light most favorable to the nonmoving party and resolving all ambiguities against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

On appeal, Miller argues, among other things, that the district court ignored material issues of fact regarding whether (1) Miller was subject to constructive discharge and (2) BCC's non-discriminatory explanation for Miller's account assignments was pretextual.[1]

"To establish a 'constructive discharge,' a plaintiff must show that the employer deliberately ma[de her] working conditions so intolerable that [she was] forced into an involuntary resignation." *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir.1993) (internal quotation marks omitted). Miller argues that her Performance Improvement Plan ("PIP") was the equivalent of a constructive discharge because it was more onerous than PIPs given to male employees and, in any event, impossible to fulfill. The record indicates, however, that male employees were given PIPs with comparable sales quotas, and Miller does not argue that these quotas were not met. Significantly, after being placed on similar PIPs, the male employees retained their employment at BCC. Miller did not even attempt to comply with her PIP, which was adjusted in response to her objections. Additionally, Miller has provided insufficient evidence for a reasonable trier of fact to conclude that her PIP was impossible to meet.[2] And the fact that two male employees retained their employment at BCC despite being placed on similar PIPs belies Miller's contention

1. Because Miller does not adequately address her retaliation claim in her briefing, we deem that claim waived. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir.1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). The district court dismissed Miller's retaliation claim because, *inter alia*, there was an insufficient temporal proximity between the initiation of her lawsuit against BCC and Miller's placement on a Performance Improvement Plan in August 2004. Miller contests this aspect of the district court's holding with the conclusory, unsupported assertion that "[a]ppellant was … the subject of many adverse actions during the entire period of her employment," App. Br. 14, and by pointing out that she filed an amended complaint in 2005.

2. Miller specifically argues that (1) her PIP goals were not for "the company's normal fiscal period"; (2) she had to meet the PIP goals in an "unreasonab[ly] short period of time"; and (3) the PIP was "based upon her sales which were under reported." App. Br., 9. But it is not disputed that Ramirez–Gosdin, Miller's supervisor, explained that the 95% quota was not "asking [Miller] to make up all the sales that were lost in her territory up to that point," but only applied for the time period of the PIP.App. 860. Further, Ramirez–Gosdin also assured Miller that Ramirez–Gosdin "was working with [the] sales analyst to ensure that we were counting all her new products correctly and would give her a chance to review that." *Id.* 861.

that placement on a PIP was tantamount to termination. Thus, the district court properly concluded that Miller failed to raise a material issue of fact regarding whether she was subject to constructive discharge.

■ As we held in *James v. N.Y. Racing Ass'n,* 233 F.3d 149 (2d Cir.2000), once the defendant employer moving for summary judgment in an employment discrimination case proffers its nondiscriminatory reason, "the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Id.* at 154. We agree with the district court that Miller failed to provide sufficient evidence to rebut BCC's nondiscriminatory explanation for the allegedly more desirable sale accounts provided to Peter Ferris and Paul Thesfield, *i.e.,* their seniority and experience. *See Miller v. Batesville Casket Co.,* No. 02–cv–5612, 2007 WL 2120371, at *9–10 (E.D.N.Y. July 23, 2007). Miller also argues that she was given less desirable accounts than male employees in general. But Miller has failed to adduce sufficient evidence from which a reasonable trier of fact could find that she was given less desirable accounts than *similarly situated* male employees, or that BCC's proffered explanation for the assignment of accounts, *i.e.,* that accounts were assigned to provide each employee with a projected income in line with prior earnings and various other non-discriminatory factors, was a pretext for discrimination.[3] *See Miller,* 2007 WL 2120371 at *10.

We have considered all of Miller's claims and find them meritless. Accordingly, the judgment of the District Court is AFFIRMED.

## II. BCC's Cross Appeal

■ A district court's decision to award costs "will be reviewed by this court only for abuse of discretion." *Dattner v. Conagra Foods, Inc.,* 458 F.3d 98, 100 (2d Cir. 2006) (per curiam). In *Whitfield v. Scully,* 241 F.3d 264 (2d Cir.2001), we explained that an award of costs against the losing party "is the normal rule obtaining in civil litigation, not an exception," and that "[i]n light of the general rule, when a prevailing party is denied costs, a district court must articulate its reasons for doing so." *Id.* at 270. Here, despite the fact that BCC was the prevailing party, the District Court failed to articulate any reason for its decision not to award costs to BCC. This was an abuse of discretion. Hence, we vacate and remand to give the District Court an opportunity to explain its decision to dismiss the case without costs to either party. In doing so, we are not suggesting that a denial of costs would not be proper in this case—on that question we express no views—but simply that such a denial must be explained.

---

**3.** Although Miller's affidavit claims that she made less money after the 2002 reorganization, she attributes this to the fact that she was no longer being reimbursed for many of her expenses, and does not argue in her brief that BCC's reimbursement policy was applied in a discriminatory manner. Thus, any such argument is waived. In any event, Miller's affidavit and Local Rule 56.1 statements do not assert that the reimbursement policy was discriminatory beyond the unelaborated claims that some individuals had their cell phone expenses reimbursed and that there was some inconsistent testimony regarding the authority to authorize expenses.