**Carlos HENDON Plaintiff,**

v.

**RAMSEY, et al., Defendants.**

**No. 06 CV 1060 J(NLS).**

United States District Court,
S.D. California.

Feb. 23, 2007.

Carlos Hendon, Represa, CA, Pro se.

Attorney General, State of California, Office of the Attorney General, San Diego, CA, for Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR SEQUENTIAL FEE COLLECTION

JONES, District Judge.

Before the Court is Plaintiff Carlos Hendon's ("Plaintiff") Motion for Sequential Fee Collection. [Doc. No. 40.] On May 12, 2006, Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis* ("IFP"), filed a 42 U.S.C. § 1983 action alleging that Defendants, who are officials and employees of Richard J. Donovan Correctional Facility, violated his constitutional and state law rights. [Doc. No. 1.] In the instant motion, Plaintiff asserts that the method by which the California Department of Corrections and Rehabilitation ("CDCR") collects filing fees is unconstitutional. (Pl.'s Mot. ¶ 1.) On December 7, 2006, Defendants filed an Opposition. [Doc. No. 44.]

The Court found the motion suitable for determination on the papers submitted and without oral argument pursuant to Local Civil Rule 7.1.d.I. [Doc. No. 47.] For the reasons set forth below, the Court **DENIES** Plaintiff's Motion.

### *Background*

In his § 1983 action, Plaintiff alleges that Defendants violated his Eighth and Fourteenth Amendment rights while treating him for mental health disorders from 2002 through July 13, 2004. (*See* Compl. ¶¶ 3–23.) Plaintiff's Complaint also alleges pendent state law claims for negligence. (*Id.* ¶¶ 21, 23.)[1] Plaintiff states in his Motion for Sequential Fee Collection that in addition to his current § 1983 action, he "[has] other suits pending in this circuit." (Pl.'s Mot. ¶ 5.) Including the § 1983 action pending before this Court, Plaintiff has

1. Defendants have filed a Motion to Dismiss in which they assert that Plaintiff failed to exhaust all available administrative remedies as to his federal claims and failed to allege compliance with California's Tort Claims Act as to his state law negligence claims. [Doc. No. 28.] The Court shall address Defendants' Motion to Dismiss in a separate Order.

filed at least three actions in the Southern District of California. Case No. 05cv1256 was dismissed on March 20, 2006, for want of prosecution. [*Hendon v. Ramsey, et al.*, No. 05cv1256, Doc. No. 18.] Case No. 06cv1502 was dismissed on February 7, 2007, for failure to file a complaint that complied with Federal Rule of Civil Procedure 8. [*Hendon v. R.J. Donovan Correctional Facility*, No. 06cv1502, Doc. No. 5.]

On July 3, 2006, this Court granted Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a), found that the allegations in his Complaint survived the initial screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and directed the U.S. Marshal to effect service. [Doc. No. 4.] Because Plaintiff submitted an affidavit in support of his Motion to Proceed IFP showing he had no funds with which to pay any initial partial filing fees, he was ordered to pay none. However, the Court ordered the CDCR "to collect from Plaintiff's prison trust account the $350 balance of the filing fee owed in this case by collecting monthly payments from [his] trust account in an amount equal to twenty percent (20%) of the preceding month's income credited to the account and [to] forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2)." (*See* IFP Order at 4.) It is this provision of the Prison Litigation Reform Act (PLRA) that Plaintiff now challenges.

While Plaintiff does not specify which constitutional right the CDCR's fee collection procedure violates, he claims the CDCR "currently assesses a cumulative fee of 20% of an inmate's total monthly income for each suit filed, so if an inmate files five lawsuits, the CDC[R] will assess a fee of 100% of the inmate's income for that month." (Pl.'s Mot. ¶ 2.) Plaintiff requests that the Court "should adopt the position taken in *Lafauci v. Cunningham*,

139 F.Supp.2d 144 (D.Mass.2001), which hold[s] that the total deducted from an inmate's monthly income for filing fees cannot exceed 20%," and that filing fees incurred for multiple federal cases and/or appeals "should be paid off sequentially." (*Id.* ¶ 3.) *See also Whitfield v. Scully*, 241 F.3d 264, 277 (2d Cir.2001) (holding that § 1915(b)(2) "generally requires the recoupment of multiple encumbrances in sequential fashion at a constant rate of 20 percent of monthly receipts to the prisoner's account.").

Defendants acknowledge that the issue before the Court is one of first impression in the Ninth Circuit, and that there is a split of authority within the Circuit Courts of Appeal. (Defs. Opp'n at 3.) Defendants argue that 28 U.S.C. § 1915(b) is properly interpreted to require 20 percent of a prisoner's trust account to be collected for each suit initiated by the prisoner. (*See* Defs.' Opp'n at 2–3) (citing *Atchison v. Collins*, 288 F.3d 177 (5th Cir.2002); *Lefkowitz v. Citi–Equity Group, Inc.*, 146 F.3d 609 (8th Cir.1998); *Newlin v. Helman*, 123 F.3d 429 (7th Cir.1997), *overruled in part on other grounds by Lee v. Clinton*, 209 F.3d 1025 (7th Cir.2000).) Defendants argue that the plain language of the PLRA and the underlying purpose of the statute support this reading. (Defs. Opp'n at 2.)

### Legal Standard

Section 1915(b)(1) of the PLRA provides:

[I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal.

28 U.S.C. § 1915(b)(1) (2000). In the instant Motion for Sequential Fee Collection, Plaintiff challenges Defendants' interpretation of 1915(b)(2). This provision of the PLRA provides for the continued payment of the remainder of the filing fee after the initial partial filing fee has been paid. Section 1915(b)(2) provides:

*After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.* The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2) (2000) (emphasis added). As noted above, there is a split of authority as to the manner in which prisoners are required to pay filing fees under § 1915(b)(2). The Second Circuit has held that § 1915(b)(2) requires that filing fees be collected sequentially, meaning an indigent prisoner can be assessed no more than 20 percent of his monthly income, regardless of the number of lawsuits filed. *See Whitfield,* 241 F.3d at 277. Each filing fee then is satisfied in the order incurred. The Fifth, Seventh, and Eighth Circuits have held that § 1915(b)(2) requires that filing fees be collected simultaneously, meaning that an inmate with multiple filing fees must pay 20 percent of his monthly income for each fee incurred. *See Atchison,* 288 F.3d at 181; *Lefkowitz,* 146 F.3d at 612; *Newlin,* 123 F.3d at 436. An inmate filing five cases, for instance, would be assessed 100% of his monthly income. The reasoning behind the two interpretations is discussed in detail below.

## A. The "Per Case" or "Cumulative" Rule

In *Newlin,* the Seventh Circuit considered the application of § 1915(b)(2) in a case where the prisoner was assessed an $8.60 monthly filing fee in the district court, and later assessed an additional $8.60 monthly filing fee in the appellate court. 123 F.3d at 429. The issue before the Seventh Circuit was whether the monthly appellate court fee was to be assessed after the prisoner had paid off his district court filing fee entirely, or whether the prisoner was required to pay off the district court fee and appellate court fee simultaneously. *Id.* at 436. Noting that "[t]he statute does not tell us whether the 20 percent-of-income payment is per case or per prisoner," the Seventh Circuit concluded that "the fees for filing the complaint and appeal cumulate." *Id.* The Seventh Circuit reasoned that if the 20–percent–of–income–payment were per prisoner, "a prisoner could file multiple suits for the price of one, postponing payment of fees for later-field suits," and that the PLRA was "designed to require the prisoner to bear some marginal cost for each legal activity." *Id.* Similarly, in *Lefkowitz* the Eighth Circuit found that "[b]ecause the PLRA fee provisions were designed to require prisoners to bear financial responsibility for each action they take, the twenty-percent rule should be applied per case." 146 F.3d at 612.

In *Atchison,* the Fifth Circuit agreed with the Seventh and Eighth Circuits and held that § 1915(b)(2) mandates that prisoners pay 20 percent of their monthly income for each case filed. 288 F.3d at 180. The Fifth Circuit first noted that the initial partial filing fee required by § 1915(b)(1) is imposed in each case, not once per prisoner irrespective of the number of suits filed. *Id.* The Fifth Circuit concluded that in order for § 1915(b)(1) to

be read consistently with § 1915(b)(2), the 20 percent monthly payments required by § 1915(b)(2) should be imposed in each case, not once per prisoner. *Id.* at 180–81. The Fifth Circuit emphasized that § 1915(b)(1) provides that *"[t]he court shall assess ... an initial partial filing fee,"* and that § 1915(b)(2) provides that the 20 percent monthly payments required thereafter are paid "to the clerk of *the court.*" *Id.* (emphasis added). The Fifth Circuit concluded that the statute, read as a whole, authorizes a court to collect an initial fee, and directs that same court to collect 20 percent of a prisoner's income for monthly payments, irrespective of the number of suits the prisoner has already initiated. *Id.* To read the statute otherwise would create "absurd results," the Fifth Circuit concluded, because if a prisoner filed suits in multiple district courts, it is unclear which district court would be permitted to collect the 20 percent monthly payment. *Id.* at 181. As an example, the Fifth Circuit noted that if the plaintiff had filed suits in both the Eastern District of Texas and the District of Columbia, and if § 1915(b)(2) permitted only 20 percent of the plaintiff's income to be deducted per month for filing fees, it would be impossible for both district courts to receive the required 20 percent monthly payment. *Id.* The Fifth Circuit also found that no "serious constitutional questions [are] raised" by a per case collection of fees owed pursuant to § 1915(b) because "indigent persons have no constitutional right to proceed *in forma pauperis* " and "states are constitutionally bound to provide [prisoners] with the necessities of life." *Id.*

### B. The "Per Prisoner" or "Sequential" Rule

In *Whitfield,* the Second Circuit found that the "text and structure of § 1915 fail to provide a definitive answer" as to whether PLRA filing fees should be collected sequentially or simultaneously.

241 F.3d at 276. Citing the Seventh Circuit's decision in *Newlin,* the Second Circuit noted that § 1915(b)(2)'s directive that the prisoner "shall be required to make monthly payments of 20 percent of the preceding month's income ... could plausibly be read to require recoupment on a per-encumbrance basis." *Id.* at 435 at Alternatively, the Second Circuit found that the statute could also be read to "serve as a uniform ceiling" of 20 percent because such a reading would provide a "compromise between the imperative to collect fees and costs and the right of prisoners to effective access to the courts." *Id.* The Second Circuit then adopted the latter reading of the statute, noting that "the simultaneous collection of multiple encumbrances could potentially expose 100 percent of a prisoner's income to recoupment," and thereby "pose a serious constitutional quandary as to whether an unreasonable burden has been placed on the prisoner's right of meaningful access to the courts." *Id.* at 277. Relying on the statutory canon that courts should "avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question," the Second Circuit held that § 1915(b)(2) requires that filing fees be paid sequentially at a constant rate of 20 percent of the prisoner's income. *Id.; see also Lafauci v. Cunningham,* 139 F.Supp.2d 144, 147 (D.Mass.2001) (finding that simultaneous collection of filing fees raises serious constitutional concerns because "an inmate owing five or more fees would have no income for postage, copying paper, envelopes, writing utensils, etc.").

### Discussion

■ The Court first turns to the language of § 1915(b) to determine whether the statute mandates that only 20 percent of Plaintiff's monthly income can þe de-

ducted for filing fees, or whether the statute requires that 20 percent of Plaintiff's income be collected for each action he has initiated. The Court agrees with the Fifth Circuit's analysis in *Atchison* and finds that the language of the statute lends itself to a reading that 20 percent of Plaintiff's monthly income must be deducted for *each* suit Plaintiff has filed.

■ "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). The Court will thus examine § 1915(b)(2) in the context of the other procedures detailed in § 1915 for proceeding *in forma pauperis*. Section 1915(a)(2) of the PLRA provides that "[a] prisoner seeking to bring a civil action or appeal a judgment ... shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6–month period immediately preceding the filing of the complaint or the notice of appeal." 28 U.S.C. § 1915(a)(2) (2000). The plain language of this subsection provides that a prisoner is required to submit a copy of his trust fund account statement each time he files a complaint or notice of appeal, because the statement must reflect the prisoner's income for the six months preceding the filing date. Similarly, for each action initiated without prepayment of the filing fee, a prisoner is required to submit an affidavit detailing all the assets he possesses and stating that he is unable to pay the filing fee. *See* 28 U.S.C. § 1915(a)(1). Next, § 1915(b)(1) of the PLRA provides that "if a prisoner brings a civil action or files an appeal ... [t]he court shall assess and, when funds exist, collect ... an initial partial filing fee." 28 U.S.C. § 1915(b)(1). The plain language of this provision indicates that each time a prisoner "brings a civil action or files an appeal", an "initial partial filing fee" is assessed. *See id.* Thus, an initial filing fee is collected each time a prisoner initiates an action, rather than once per prisoner irrespective of the number of actions the prisoner has filed.

Section 1915(b)(2), the subsection contested here, provides that "[a]fter the payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income ... to the clerk of the court." 28 U.S.C. § 1915(b)(2). Given that the other provisions of § 1915 require a prisoner to submit documents and pay initial filing fees for each civil action or appeal he files, § 1915(b)(2) lends itself to a reading that the 20 percent monthly payments must also be collected for each civil action or appeal filed. In other words, the overall statutory scheme is written in a manner that requires prisoners to complete procedures and pay fees on a per case basis, rather than a per prisoner basis. Further, § 1915(b)(2) references "the initial partial filing fee" discussed in § 1915(b)(1), suggesting that the subsections of the statute are intended to be read as an overall statutory scheme. The Court thus **FINDS** that when read in the context of the entire statute, § 1915(b)(2) mandates that after payment of the initial partial filing fee for each action or appeal filed, prisoners are also required to make monthly payments of 20 percent of their income for *each* civil action or appeal filed.

■ The Court must also examine whether requiring Plaintiff to pay 20 percent of his monthly income for each action filed would place an unreasonable burden on his constitutional right of meaningful access to the courts. In *Whitfield*, the Second Circuit declined to hold that mandatory recoupment of 100 percent of a prisoner's monthly income would be unconstitutional, but the panel did find that

"such recoupment could raise serious concerns." *See* 241 F.3d at 277. Similarly, in *Lafauci*, the district court found that recoupment of 100 percent of a prisoner's monthly income would raise serious constitutional concerns because it would leave a prisoner with "no income for postage, copying, paper, envelopes, writing utensils, etc.-potentially leaving him/her without means of court communication." *See* 139 F.Supp.2d at 147. However, the Supreme Court has stated that "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." *Bounds v. Smith*, 430 U.S. 817, 824–25, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Thus, even if 100 percent of Plaintiff's income is recouped for filing fees, he will not be denied access to paper, writing instruments, or postage because the government is required to provide these materials to indigent inmates. Similarly, as noted by the Ninth Circuit, "[b]ecause prisoners are in the custody of the state and accordingly have the 'essentials of life' provided by the government," even the most indigent prisoner subject to the cumulative collection of filing fees required by § 1915(b) will not be "required to make choices between his lawsuit and the necessities of life." *See Taylor v. Delatoore*, 281 F.3d 844, 849 (2002) (citations omitted). Further, § 1915(b)(4) expressly provides that a prisoner cannot "be prohibited from bringing a civil action" simply because he is impoverished. *Id.* at 848. As a result, Plaintiff will still be permitted to initiate actions even if 100 percent of his monthly income is collected for filing fees. In fact, this Court permitted Plaintiff to file his pending § 1983 action *in forma pauperis* because Plaintiff had no funds from which to pay the initial partial filing fee. (*See* IFP Order at 2–3 (citing § 1915(b)(4)).) Most significantly, Plaintiff does not allege that the CDCR's current policy of collect-

ing 20 percent of a prisoner's income per action filed has denied him access to the courts. It is noteworthy that Plaintiff has filed several motions in his pending § 1983 action and has filed an opposition to Defendants' pending motion to dismiss, because this indicates that his access to the courts has not been impaired by the CDCR's policy. [*See* Doc. Nos. 23, 32, 38, 46.] Plaintiff merely alleges that the policy is "unconstitutional" without explaining the ways in which, if any, the policy has interfered with his ability to pursue litigation. (*See* Pl.'s Mot. ¶ 1.) Thus, the Court **FINDS** that collecting 20 percent of Plaintiff's monthly income for each action he has filed raises no serious constitutional questions.

### *Conclusion*

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Sequential Fee Collection.

**IT IS SO ORDERED.**