**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 15, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARK ANDREW CHRISTENSEN,

Plaintiff-Appellant,

v.

BIG HORN COUNTY BOARD OF
COUNTY COMMISSIONERS; TONY
HARRISON, Big Horn County Jail
Sergeant; DWIGHT MACKAY,
United States Marshall; EVA (LNU),
Big Horn County Jail Nurse; SHERIFF
BLACKBURN, Big Horn County
Sheriff,

Defendants-Appellees.

Nos. 09-8040 & 09-8054
(D.C. No. 2:08-CV-00112-ABJ)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **PORFILIO**, and **MURPHY,** Circuit Judges.

Plaintiff Mark Andrew Christensen is a federal prisoner confined for a time

at the Big Horn County Jail in Basin, Wyoming. He subsequently brought this

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

civil rights action challenging certain conditions of his confinement at the jail. Naming as defendants various county officials and employees, as well as the United States Marshal, he sought redress for the alleged denial of adequate medical care, access to the courts, and equal protection of the law (with respect to medical care and access to the courts as compared to federal prisoners housed in federal facilities). In the course of three separate orders, the district court dismissed all of Mr. Christensen's claims with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] He now appeals, raising several procedural objections to the disposition of his claims. Reading his appellate briefs liberally, we construe them as also challenging the merits of the district court's ruling that his pleadings failed to state a claim. For the reasons explained below, we affirm.

## I. THE COMPLAINT

### A. Allegations Regarding Medical Care

Mr. Christensen alleges that, on January 28, 2008, while incarcerated at the Big Horn County Jail, he started vomiting and spitting up blood and noticed blood in his stool. He experienced "extreme pain in [his] throat, stomach, and guts [and was] unable to eat or drink." Complaint (R. vol. 1 doc. 4) at 4. Two days later, he was examined by defendant Nurse Eva and told her about his symptoms. *Id.*

---

[1]     As to defendant "Nurse Eva," the court also concluded that Mr. Christensen had failed to provide sufficient information to allow service of the complaint. In light of our disposition of this claim on the merits, we need not consider this alternative basis for dismissal.

"All she did was take [his] pulse and blood pressure by hand," noting they were "normal." *Id.* She said that she would talk to a doctor, but never did. *Id.*

On January 31, 2008, Mr. Christensen filed a grievance with jail officials about the lack of medical care, and sent a letter about the issue to the office of the United States Marshal in Billings, Montana. *Id.* at 4A. That afternoon, Nurse Eva examined him in the presence of Jail Sergeant Tony Harrison, again taking his blood pressure and pulse by hand and finding them to be normal. *Id.* That evening, Sergeant Harrison transferred Mr. Christensen out of the general jail population into an isolation cell in the booking area. *Id.*

The next afternoon, another jail officer noticed blood on Mr. Christensen's washcloth and asked about it. *Id.* After Mr. Christensen explained his symptoms, the officer contacted local hospital personnel and followed their recommendation to take Mr. Christensen's pulse and blood pressure, using the device kept for this purpose in the jail medical station. *Id.* Getting "extremely high" readings, jail personnel transported Mr. Christensen to the hospital emergency room, where a doctor determined that his esophagus was torn and bleeding. *Id.* The doctor prescribed Carafate to be used for three days to promote scabbing of the throat, and Prilosec, evidently to reduce stomach acid and prevent additional esophageal damage. *Id.* The doctor also recommended that Mr. Christensen maintain an elevated position. *Id.* at 4B. Mr. Christensen was returned to the general jail

population and issued a second mattress to help comply with the doctor's recommendation regarding elevation. *Id.* at 4A-4B.

Mr. Christensen continued to have stomach complaints, and jail officials put him on a bland diet. *Id.* at 4A; *see also id.* at 4B (noting Mr. Christensen's complaints about variety and caloric content of bland diet). Over the next ten days, he reported that he had blood in his stool and was spitting up blood, symptoms that were monitored and confirmed by jail officials. *Id.* at 4A.

On February 14, 2008, Sergeant Harrison confiscated Mr. Christensen's second mattress. *Id.* at 4B. Within two days, however, another officer reissued it to him. *Id.* Also on February 14, Nurse Eva extended the Carafate medication for his throat without examining him and without obtaining permission from the doctor who had issued the initial prescription. *Id.* Five weeks later, he was transferred to the Yellowstone County Detention Center in Billings, Montana. *Id.* At that time, his throat was "still scabbed up and hurting" and he "still ha[d] stomach and gut issues not addressed." *Id.*

Finally, in addition to the above allegations specifically relating to the treatment received by Mr. Christensen, his pleadings also complain in more general terms about the medical care available to all inmates at the Big Horn County Jail. He alleges that the jail is inadequate because it does not have full time medical staff, necessitating the use of non-medical personnel to dispense medication and make (unspecified) medical decisions. *Id.* at 4C.

-4-

## B. Allegations Regarding Access to the Courts

Mr. Christensen complains in general terms that inmates at the jail are not provided access to an adequate law library or collection of legal materials. *Id.* His pleadings do not detail the specific deficiencies.

## C. Allegations Regarding Denial of Equal Protection

Mr. Christensen alleges in cursory fashion that his confinement at the county jail violated his right to equal protection. *See id.* at 4C and 5. Basically, he objects to the fact that while at the county jail, he was housed under conditions that differed from those typically encountered by an inmate at a federal facility.

## II. SUMMARY OF DISTRICT COURT DISPOSITION

Over the course of three orders, the district court dismissed all of Mr. Christensen's claims under Rule 12(b)(6). The court held that Nurse Eva's alleged conduct was insufficient to support a constitutional claim of deliberate indifference under *Estelle v. Gamble*, 429 U.S. 97 (1976). The court similarly concluded that the allegations specifically involving Sergeant Tony Harrison did not rise to the level of any constitutional violation. Further, the court rejected Mr. Christensen's access-to-courts claim because the provision of a law library is not the exclusive means of satisfying prisoners' right of access and, in any event, Mr. Christensen did not allege any actual prejudice as required for an actionable claim under *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996). Finally, regarding the defendants who did not directly participate in the events recited in the complaint,

the county commissioners, Sheriff Blackburn, and Marshal Mackay, the court held that Mr. Christensen's conclusory allegations of inadequate supervision and training of jail staff, and "ultimate responsibility" for jail conditions and treatment of federal inmates, did not state a claim for derivative liability.[2]

### III. PROCEDURAL OBJECTIONS RAISED ON APPEAL

On appeal, Mr. Christensen argues that the district court erred in (1) failing to order the defendants to prepare an investigative report pursuant to *Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978); (2) ruling on defendants' motions

---

[2] The district court did not address Mr. Christensen's claim that his pretrial confinement in the county jail violated his right to equal protection. Given his perfunctory presentation of the claim below, the oversight is not surprising (and Mr. Christensen does not even mention it on appeal). In any event, the claim rests on a supposition–supported by no legal authority–that all persons in federal custody, wherever they are housed, must be held under the same conditions and, therefore, confinement at a county jail where conditions unavoidably (and quite reasonably) deviate from what an inmate in a federal facility might typically encounter is constitutionally impermissible. This position, which would in effect deny federal (and state) prison authorities the ability to temporarily relinquish physical custody of prisoners to local facilities, is meritless. *See, e.g.*, *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995); *Strickler v. Waters*, 989 F.2d 1375, 1389 (4th Cir. 1993); *Joost v. Cornell Corr., Inc.*, No. 99-1496, 2000 WL 627652, at *2 (1st Cir. May 9, 2000) (unpub.).

The district court also did not specifically address Mr. Christensen's claim regarding the lack of full-time medical staff. Again, he makes no objection to the omission on appeal, and in any event our de novo review of the pleadings reveals that this claim is facially deficient as well. There is no plausible factual basis to causally connect the asserted constitutional deficiency to the alleged inadequacy of the care Mr. Christensen received: he was in fact examined and treated by medical personnel, at the jail and emergency room. As we will discuss, any inadequacy in his care was a result of decisions made by these professionals, not the lack of medical personnel to make such decisions.

without a report and recommendation from a magistrate judge; (3) failing to give him notice of the requirements for responding to a summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure; and (4) not allowing him to amend his complaint.[3] We reject the first three objections immediately below, and address the last in connection with our review of the merits of the district court's dismissal of the complaint under Rule 12(b)(6).

## A. Lack of a *Martinez* Report

This court's precedent permitting the use of *Martinez* reports from prison authorities does not somehow create a procedural entitlement on behalf of prisoners seeking to avoid dismissal of deficient pleadings under Rule 12(b)(6). Indeed, *Martinez* reports often provide *the basis for* summary dismissal of frivolous prisoner filings under 28 U.S.C. § 1915, *see, e.g.*, *Schlicher v. Thomas*, 111 F.3d 777, 779 (10th Cir. 1997); *Olson v. Stotts*, 9 F.3d 1475, 1476-77 (10th Cir. 1993); *Johnson v. Stephan*, 6 F.3d 691, 691-92 (10th Cir. 1993); or the grant of summary judgment on behalf of prison defendants, *see, e.g.*, *Smith v. Cummings*, 445 F.3d 1254, 1257-59 (10th Cir. 2006); *Schlicher*, 111 F.3d at 779-80; *Ledoux v. Davies*, 961 F.2d 1536, 1537-38 (10th Cir. 1992). Moreover, the usefulness of *Martinez* reports, even for the defendant prison

---

[3]    He also complains that insufficient efforts were made to serve Sheriff Blackburn and Nurse Eva, but the lack of service on these defendants plays no role in our disposition.

officials, is inherently limited in the context of Rule 12(b)(6): "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether *the plaintiff's complaint alone* is legally sufficient to state a claim," and thus, "[i]n determining whether a plaintiff has stated a claim, the district court may not look to the *Martinez* report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes." *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993). Where, as here, the complaint clearly fails to state a claim, the district court does not commit reversible error in forgoing a *Martinez* report.

**B. Decision without Magistrate Judge Report and Recommendation**

The district court also did not err in declining to refer defendants' motions to dismiss to a magistrate judge for a report and recommendation. The governing statute provides that the district court "*may* . . . designate a magistrate judge . . . to submit . . . proposed findings of fact and recommendations for the disposition of [such a] motion." 28 U.S.C. § 636(b)(1)(B) (emphasis added). "The statute permits, but does not require, a district judge to designate a magistrate judge to submit proposed findings or recommendations for the disposition of a case." *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009). In short, "reference to a magistrate judge is entirely discretionary . . . [and] [t]he litigant has no right to a magistrate judge." *Id.* at 933.

## C. Lack of Notice Regarding Rule 56 Requirements

"[W]hen a district court relies on material from outside the pleadings, the court converts the motion to dismiss into a motion for summary judgment . . . , [a]nd when such a conversion occurs, the district court must provide the parties with notice so that all factual allegations may be met with countervailing evidence." *Price v. Philpot*, 420 F.3d 1158, 1167 (10th Cir. 2005) (quotation omitted). As the above quote reflects, the conversion process and notice requirement are not triggered by the mere presence of outside materials, but by the court's *reliance* on such materials–which are inapposite to a proper Rule 12(b)(6) disposition. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004) (noting that even where court's receipt of outside materials was undisputed, "to convert the District Court's Rule 12(b)(6) order to one for summary judgment, we must find that the District Court relied on this material in rendering its decision"). And, for the same reason, even when a district court has erroneously considered extraneous materials on an unconverted motion to dismiss, we may still affirm "if the dismissal can be justified under Fed. R. Civ. P. 12(b)(6) standards without consideration of the matters outside the pleadings." *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) (following *Miller v. Glanz*, 948 F.2d 1562, 1566 (10th Cir. 1991)).

While the district court briefly mentioned some extraneous materials, in particular relating to the claims involving the Marshal's responsibility for the

conditions of confinement for federal prisoners, our reading of its orders does not indicate a material reliance on this evidence for the court's determination that the complaint failed to state a constitutional claim against the parties involved. In any event, our own review of the complaint, explained in the next section, does not rely on any material outside the complaint and, thus, properly permits us to affirm under the authorities cited above.

## IV. RULE 12(b)(6) DISMISSAL AND AMENDMENT

We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6), applying the same legal standard applicable in the district court. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). Well-pleaded facts, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the plaintiff. *Id.* To overcome a motion to dismiss, "the complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)).

## A.  Board of County Commissioners and Sheriff Blackburn[4]

The primary thrust of Mr. Christensen's claims against these parties, who did not directly participate in the operative events recounted in the complaint, is that they are formally responsible for operations, conditions, and the conduct of staff at the Big Horn County Jail.  He also refers in conclusory terms to their culpability for inadequate supervision and training of jail staff.  The short answer to these claims is that, in light of the inadequacy of the underlying constitutional allegations against the actual participants–which we confirm on this appeal–there is nothing for which these defendants may be held derivatively accountable.  *See Martinez v. Beggs*, 563 F.3d 1082, 1091-92 (10th Cir. 2009) (holding, in civil rights action over medical care at county jail, that where "individual county defendants . . . did not violate [jail inmate's] constitutional rights, [the Sheriff] and the county cannot be held liable [for policy, training, or supervision] as a

---

[4]     Sheriff Blackburn has moved to dismiss the appeal as it relates to him, on the ground that he had not yet been served at the time the case was dismissed (he had just been substituted for another person incorrectly named as Sheriff).  The premise of this motion–that we lack jurisdiction to review dismissals unless the dismissed defendant had previously been served–is meritless.  Nothing insulates such orders from appellate review–indeed, if it did, we could not review a whole class of dispositions, involving dismissals under the screening mechanism in 28 U.S.C. § 1915A, which are routinely accomplished prior to service on the defendants (the statute encourages screening "before *docketing*, if feasible" (emphasis added)).  Our precedent squarely contradicts the position taken by Sheriff Blackburn.  *See, e.g.*, *Plunk v. Givens*, 234 F.3d 1128, 1129 (10th Cir. 2000) (expressly noting that "the plain language of § 1915A makes clear that the statute . . . does not require that process be served . . . before dismissal," in the course of reviewing § 1915A dismissal order on the merits (quotation omitted)).

matter of law"). The slightly longer answer, explained by the district court, is that the allegations for the derivative liability of these defendants are themselves facially deficient. Repeating that analysis here is unnecessary. Suffice it to say that Mr. Christensen's pleadings in this respect reflect the "formulaic recitation" of "bare assertions" deemed categorically deficient by the Supreme Court in *Iqbal*. 129 S. Ct. at 1951.

## B. Marshal Mackay

Essentially the same deficiencies are fatal to the claim asserted against Marshal Mackay, who is named in the complaint on the basis of his vaguely alleged "ultimate responsibility" for the treatment of federal inmates placed in state of local custody. Again, he cannot be held liable on some derivative basis for nonexistent constitutional violations. Nor was the conclusory claim asserted against him supported by a factual foundation sufficient to hold him liable had any constitutional injury occurred.

## C. Nurse Eva

In clarifying what constitutes actionable deliberate indifference to serious medical needs in its landmark *Estelle v. Gamble* decision, the Supreme Court "carefully noted . . . that 'an inadvertent failure to provide medical care' does not rise to an Eighth Amendment violation." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (quoting *Estelle*, 429 U.S. at 105-06). "'Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition

-12-

does not state a valid claim of medical mistreatment under the Eighth Amendment."' *Id.* (quoting *Estelle*, 429 U.S. at 106). This principle applies as well to medical personnel other than doctors, including nurses examining prisoners for immediate treatment and/or referral for further examination by a physician. *See, e.g.*, *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (discussing *Sealock v. Colorado*, 218 F.3d 1205, 1208, 1211, 1212 n.7 (10th Cir. 2000)); *Boyett v. County of Washington*, 282 F. App'x 667, 675-76 (10th Cir. 2008) (unpub.). The alleged conduct of Nurse Eva here falls squarely within this principle.

**D. Sergeant Harrison**

Most of the allegations involving Sergeant Harrison are clearly inadequate to support a claim of constitutional dimension. The only one warranting specific comment is his removal of the extra mattress issued to assist Mr. Christensen in maintaining the elevated position recommended by the emergency room doctor. Staff interference with access to treatment recommended by medical personnel can, of course, support a claim of deliberate indifference under *Estelle*. *See, e.g.*, *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005); *Howard v. Dickerson*, 34 F.3d 978, 980-81 (10th Cir. 1994). But, as the district court emphasized, the complaint indicates that the extra mattress was replaced within two days. Thus, this episode would give rise to a claim of constitutional magnitude only if the complaint plausibly pled that this short delay "'resulted in substantial harm,'"

-13-

such as "'lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001), and *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001), respectively). This critical allegation is neither expressly included in the complaint nor plausibly inferred from the allegations that are made.

Mr. Christensen specifies the harm attributed to the actions of the various defendants in the "Injury" section of his complaint. His allegation of pain and potential permanent damage to his throat relates to the delay in treatment from his first complaints to Nurse Eva to his transportation to the emergency room a week later, and to her later mistaken extension of his prescribed medication. Complaint at 5-6. Nowhere does he allege any pain or possible injury caused by the two days he went without the extra mattress. Indeed, he does not allege that he even complained about it at the time.[5] There undoubtedly are circumstances in which the serious and immediate threat posed by a medical condition, coupled with the particular efficacy of a specific treatment at a critical juncture, would raise a plausible inference that even two days' delay involved constitutionally significant harm, even if the plaintiff neglected to make the allegation. This is not that case. The emergency response and treatment for the acute stage of Mr. Christensen's

---

[5] While it appears that this claim was not exhausted through administrative grievance, the present procedural posture of the case does not permit a disposition on this basis. *See Roberts v. Berraras*, 484 F.3d 1236, 1240, 1244 (10th Cir. 2007).

-14-

throat condition occurred well before the mattress episode. There is no claim that the two days without the extra mattress reversed the benefit of this treatment or triggered a resumption or exacerbation of symptoms. Moreover, there is no indication, nor any practical reason to suppose, that the use of an extra mattress was the only means available to Mr. Christensen simply to maintain an elevated position while reclining.[6] We agree with the district court that the complaint failed to state an actionable claim against Sergeant Harrison on this basis.

## E. Opportunity for Amendment

Mr. Christensen objects that he was not given the opportunity to cure his pleading deficiencies by amendment. We see no reason to prolong this case with a futile remand for this purpose. The claims asserted are legally inadequate for fundamental reasons that plausible amendment would not cure. *See generally Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (noting that "the district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint"). While the district court did not itself make a determination regarding futility, that is both (1) substantively harmless in light of our own de novo conclusion on the matter, and (2) procedurally unobjectionable in light of Mr. Christensen's failure

---

[6] Mr. Christensen does not allege that the doctor prescribed or specifically insisted on the use of a second mattress. He alleges that the doctor recommended maintenance of an elevated position–for which the jail chose to provide an extra mattress rather than some other practical means to accomplish the same thing.

to file a formally adequate and factually substantiated motion for leave to amend in the district court following submission of defendants' motions to dismiss under Rule 12(b)(6), *see Calderon v. Kan. Dep't of Social & Rehab. Servs.*, 181 F.3d 1180, 1185 -87 (10th Cir. 1999); *Glenn v. First Nat'l Bank*, 868 F.2d 368, 370-71 (10th Cir. 1989).

## V.  MOTION FOR SEQUENTIAL PAYMENT OF FILING FEES

Mr. Christensen has filed a "Motion for Order from the Court Regarding Payments," requesting that filing fees for the two separate appeals resolved here be collected sequentially rather than cumulatively.  Under 28 U.S.C. § 1915(b), a prisoner proceeding in forma pauperis in a civil action or appeal must still pay the full filing fee, but is allowed to do so in installments, beginning with an initial partial payment upon filing, section 1915(b)(1), followed by monthly installments fixed at "20 percent of the preceding month's income credited to the prisoner's account . . . each time the amount in the account exceeds $10 until the filing fees are paid," section 1915(b)(2).  The thrust of Mr. Christensen's motion is that he wants the twenty percent deduction made for only one appeal at a time, freeing up the remainder of his account for other expenditures while his fee obligation for the second appeal is effectively suspended.  We deny the motion.  We agree with the majority of circuits that have considered this question and held that the limited deduction for fees specified in § 1915(b)(2) is triggered by each action or appeal pursued, allowing here for the cumulative deduction of forty percent of

Mr. Christensen's monthly income to satisfy the fee obligations incurred for the instant appeals.

The pertinent language of § 1915(b)(2), considered in isolation, does not provide a clear directive regarding application of the twenty-percent limitation: "After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." The majority "cumulative payment" or "per case" position with which we agree has been adopted based on standard interpretive principles (construing § 1915(b)(2) in light of other provisions in § 1915) and/or a recognition that the overarching purpose of the statute, to restrain runaway prison litigation with some pay-as-you-go constraint, would be diluted if not defeated by permitting prisoners with one ongoing case to postpone all successive filing fee obligations.[7] *See Atchison v. Collins*, 288 F.3d 177, 179-81 (5th Cir. 2002); *Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997), *overruled on other grounds*, *Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000); *see Lefkowitz v. Citi-Equity Group, Inc.*, 146 F.3d 609, 612 (8th Cir. 1998) (dealing with similar limitation on payment of initial filing fee in § 1915(b)(1) and following *Newlin* to broadly hold

---

[7] In this regard we note that several circuits have held that once a prisoner is released, any § 1915 partial payment obligations cease altogether (several circuits disagree). *See Carson v. Tulsa Police Dep't*, 266 F. App'x 763, 766 (10th Cir. 2008) (noting circuit split and declining to take a side, as issue was moot under the circumstances).

that "PLRA fee provisions were designed to require prisoners to bear financial responsibility for each action they take, [and thus] the twenty-percent rule should be applied per case").  The minority "sequential payment" or "per prisoner" position that Mr. Christensen espouses was adopted by the Second Circuit to avoid potential constitutional concerns over the burden simultaneous collection of multiple fee obligations could place on a prisoner's right of access to the courts. *See Whitfield v. Scully*, 241 F.3d 264, 277 (2d Cir. 2001).

A thoughtful discussion of the competing circuit positions is included in *Hendon v. Ramsey*, 478 F. Supp. 2d 1214, 1216-20 (S.D. Cal. 2007), which sets out a fairly thorough textual analysis supporting the cumulative-payment/per-case approach.  The analysis rests on the "'fundamental cannon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'"  *Id.* at 1219 (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).  *Hendon* cites several instances in § 1915 where prisoner fee/fee-related obligations are clearly meant to apply on a per-case basis, in particular:  (1) the requirement in § 1915(a)(2) that "[a] prisoner seeking to bring a civil action or appeal a judgment . . . shall submit a certified copy of [his] trust fund account statement . . . for the 6-month period immediately preceding the filing of the complaint or the notice of appeal"; and (2) the requirement in § 1915(b)(1) that "if a prisoner brings a civil action or files an appeal . . . [t]he court shall assess and, when funds exist, collect . . . an initial

-18-

partial filing fee."  Regarding the trust fund statement, *Hendon* notes that "[t]he

plain language of [§ 1915(a)(2)] provides that a prisoner is required to submit a

copy . . . *each time he files a complaint or notice of appeal*, because the statement

must reflect the prisoner's income for the six months preceding the filing date."

478 F. Supp. 2d at 1219 (emphasis added).  Similarly, regarding the initial filing

fee, *Hendon* notes that "[t]he plain language of [§ 1915(b)(1)] indicates that *each*

*time a prisoner brings a civil action or files an appeal*, an initial partial filing fee

is assessed."  *Id.* (quotation omitted and emphasis added).  Read in light of these

related provisions, the court concludes that § 1915(b)(2) was also meant to apply

on a per-case basis:

> Given that the other provisions of § 1915 require a prisoner to submit
> documents and pay initial filing fees for each civil action or appeal
> he files, § 1915(b)(2) lends itself to a reading that the 20 percent
> monthly payments must also be collected for each civil action or
> appeal filed.  In other words, the overall statutory scheme is written
> in a manner that requires prisoners to complete procedures and pay
> fees on a per case basis, rather than a per prisoner basis. Further,
> § 1915(b)(2) references "the initial partial filing fee" discussed in
> § 1915(b)(1), suggesting that the subsections of the statute are
> intended to be read as an overall statutory scheme.  The Court thus
> FINDS that when read in the context of the entire statute,
> § 1915(b)(2) mandates that after payment of the initial partial filing
> fee for each action or appeal filed, *prisoners are also required to*
> *make monthly payments of 20 percent of their income for each civil*
> *action or appeal filed.*

*Id.* (emphasis added); *see Atchison*, 288 F.3d at 180-81 (reading § 1915(b)(2) as

applying on per-case basis because "the initial payment required by § 1915(b)[1]

is imposed in each case, not once per prison[er] irrespective of the number of suits initiated").

We find this textual analysis persuasive, particularly its consistent reading of the similar provisions in §§ 1915(b)(1) and (b)(2). This court has previously construed other aspects of § 1915(b)(2) to maintain consistency with an intent evident in § 1915(b)(1). *See Cosby v. Meadors*, 351 F.3d 1324, 1326-27 (10th Cir. 2003) (construing reference to monthly "income" in § 1915(b)(2) broadly "to include all deposits to the prisoner's inmate account," because similar provision in § 1915(b)(1) refers to "deposits" and "this interpretation of the word [income] produces consistency between § 1915(b)(2) . . . and § 1915(b)(1)").

Bolstering this conclusion from textual analysis is a recognition that the cumulative-payment/per-case approach furthers the overarching purpose of imposing the installment-payment obligations uniquely on prisoners, which, as this court has explained, is "to reduce frivolous prisoner litigation by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees." *Cosby*, 351 F.3d at 1327 (quotation omitted). The Seventh Circuit relied heavily on this legislative goal in adopting the cumulative-payment/per-case approach:

> Otherwise a prisoner could file multiple suits for the price of one, postponing payment of the fees for later-filed suits until after the end of imprisonment (and likely avoiding them altogether). The PLRA is designed to require the prisoner to bear some marginal cost for each legal activity. Unless payment begins soon after the event that

creates the liability, this will not happen.  A prisoner who files one suit remits 20 percent of income to his prison trust account; a suit and an appeal then must commit 40 percent, and so on.

*Newlin*, 123 F.3d at 436.

On the other hand, we acknowledge the Second Circuit's concern in *Whitfield* about burdening prisoners' access to courts, but we do not think that concern controls here.  First of all, the "canon of constitutional avoidance" invoked by the Second Circuit properly comes into play only when a statute is found to be ambiguous "after the application of ordinary textual analysis." *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1245 (10th Cir. 2008), *cert. denied*, 130 S. Ct. 1011 (2009).  In light of our conclusion that the meaning of § 1915(b)(2) is fully intelligible once it is construed in light of the statute as a whole, there is no occasion to apply the canon.  *See Atchison*, 288 F.3d at 181 (noting that "the duty to avoid constitutional questions is not a license to rewrite the statute," and declining to follow *Whitfield* because "[e]ven if [the Second Circuit's] constitutional arguments had merit, we would be bound by the unambiguous meaning of the text").

Secondly, we are not convinced that the cumulative-payment/per-case position necessarily raises serious constitutional concerns.  *Hendon* does a good job of pointing out the unsubstantiated nature of the presuppositions underlying the Second Circuit's position on this point:

The Court must also examine whether requiring Plaintiff to pay 20 percent of his monthly income for each action filed would place an unreasonable burden on his constitutional right of meaningful access to the courts. In *Whitfield*, the Second Circuit declined to hold that mandatory recoupment of 100 percent of a prisoner's monthly income would be unconstitutional, but the panel did find that "such recoupment could raise serious concerns." *See* 241 F.3d at 277. Similarly, in *Lafauci* [*v. Cunningham*, 139 F. Supp. 2d 144 (D. Mass. 2001)], the district court found that recoupment of 100 percent of a prisoner's monthly income would raise serious constitutional concerns because it would leave a prisoner with "no income for postage, copying, paper, envelopes, writing utensils, etc.-potentially leaving him/her without means of court communication." *See* 139 F. Supp. 2d at 147. However, the Supreme Court has stated that "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." *Bounds v. Smith*, 430 U.S. 817, 824-25, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Thus, even if 100 percent of Plaintiff's income is recouped for filing fees, he will not be denied access to paper, writing instruments, or postage because the government is required to provide these materials to indigent inmates. Similarly, as noted by the Ninth Circuit, "[b]ecause prisoners are in the custody of the state and accordingly have the 'essentials of life' provided by the government," even the most indigent prisoner subject to the cumulative collection of filing fees required by § 1915(b) will not be "required to make choices between his lawsuit and the necessities of life." *See Taylor v. Delatoore*, 281 F.3d 844, 849 (2002) (citations omitted). Further, § 1915(b)(4) expressly provides that a prisoner cannot "be prohibited from bringing a civil action" simply because he is impoverished. *Id.* at 848. As a result, Plaintiff will still be permitted to initiate actions even if 100 percent of his monthly income is collected for filing fees.

*Hendon*, 478 F. Supp. 2d at 1219-20; *see Atchison*, 288 F.3d at 181. In the same vein, some time ago this court upheld § 1915(b) against the general constitutional objection that, under its fee provisions, the prisoner "is forced to choose between spending his limited prison account on the small amenities of life available to him

in prison and pursing an appeal [or civil action]." *Shabazz v. Parsons*, 127 F.3d 1246, 1248 (10th Cir. 1997). We quoted with express approval the following passage, which reinforces the passage from *Hendon* above by adding the point that the prisoner's partial-payment obligations do not even apply to the first ten dollars in his account:

> "To further ensure that prisoners need not totally deprive themselves of those small amenities of life which they are permitted to acquire in a prison or mental hospital beyond the food, clothing, and lodging already furnished by the state," section 1915 allows payment to be taken from the prisoner's account only where "the amount in the account exceeds $10 . . . ."

*Id.* (quoting *Roller v. Gunn*, 107 F.3d 227, 233 (4th Cir. 1997)) (further quotation omitted).

For the above reasons, we hold that § 1915(b)(2) authorizes cumulative deductions of twenty percent for each civil action or appellate filing fee incurred by a prisoner. We therefore deny Mr. Christensen's motion to order sequential payment of his appellate filing fees and thereby limit the monthly deduction for his multiple appeals to a total of twenty percent of his income.

The judgment of the district court is AFFIRMED.  Mr. Christensen's motion to proceed on appeal in forma pauperis is GRANTED, but his motion for sequential payment of his fee obligations under § 1915(b) is DENIED.  Sheriff Blackburn's motion to dismiss is DENIED.

Entered for the Court


Michael R. Murphy
Circuit Judge